[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Palmer*, Slip Opinion No. 2024-Ohio-539.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-539

THE STATE OF OHIO, APPELLEE, *v.* PALMER, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Palmer*, Slip Opinion No. 2024-Ohio-539.]**

*Criminal law—R.C. 2901.05—Self-defense jury instruction—Appellant entitled to self-defense jury instruction because he met his burden of production by presenting legally sufficient evidence for each element of defense—Court of appeals' judgment reversed, and cause remanded to trial court.*

(No. 2022-0987—Submitted June 27, 2023—Decided February 15, 2024.)

APPEAL from the Court of Appeals for Clermont County,

No. CA2021-07-035, 2022-Ohio-2181.

_____

KENNEDY, C.J.

{¶ 1} In this discretionary appeal from a judgment of the Twelfth District Court of Appeals, we consider whether a taxicab driver who claimed self-defense for shooting a taxicab patron was entitled to a self-defense jury instruction at trial. A defendant is entitled to a self-defense jury instruction when he presents legally

sufficient evidence for every element of a self-defense claim. This burden of production is de minimis and can be satisfied with the state's own evidence. Because we find that the taxicab driver satisfied his burden of production by presenting legally sufficient evidence for every element of self-defense, we hold that he was entitled to a self-defense jury instruction. Therefore, we reverse the judgment of the Twelfth District and we remand this case to the trial court for a new trial on the felonious-assault charge and accompanying firearm specification.

## I. Facts and Procedural Background

{¶ 2} In December 2019, Nicholas Young, aged 38, attended a work holiday party. Young testified that he could not remember the exact number of drinks he had consumed that day but admitted that the purpose of the day "was to cut loose." Witnesses testified that Young was heavily intoxicated and slurring his speech and that he smelled of alcohol.

{¶ 3} At some point in the evening, Young ended up passed out at the Jack Casino in downtown Cincinnati. Young was escorted from the property and entered a taxicab to go home. The taxi was operated by appellant, Phillip Palmer, aged 71.

{¶ 4} When Young entered the taxicab, Palmer could not understand most of what Young was saying. Palmer was able to confirm only that Young wanted to go to Moscow, Ohio. Although Palmer did not know Young's exact address, Palmer began driving toward Moscow because he did not want to lose the cab fare. During the cab ride, the vehicle ended up in standstill traffic and the meter continued to run, which prompted Young to comment on the accruing cab fare. Palmer turned off the meter and proceeded to reroute the cab. Sometime after this interaction, Young fell asleep.

{¶ 5} Eventually, Palmer saw a sign for Moscow. According to Palmer, he called out twice to Young, "Moscow, sir," but Young did not respond. Palmer continued driving. Once Palmer saw a sign for Ripley, Ohio, he stopped the cab and woke up Young. Young was upset when he saw that Palmer had driven past

Moscow and that the cab fare was over $100—Palmer testified that the total fare was $120 and Young testified that the total fare was $170. Young demanded that Palmer take him back to a gas station in Moscow.

{¶ 6} Once they arrived at the gas station, Young stated that he was not going to pay the cab fare and exited the vehicle. Palmer exited the cab after Young and followed Young into the gas-station convenience store. Inside the store, Palmer heard Young offer another patron $20 to drive him home. Upon hearing this, Palmer demanded that Young pay him for the ride to Moscow. The dispute over the unpaid cab fare turned into a heated argument between Young and Palmer.

{¶ 7} While in the store, Palmer became aware that he was the only black man in an area where everyone else was white. Video-surveillance footage confirms that everyone at the gas station, other than Palmer, was white. Additionally, Palmer knew that Young was "in his neck of the woods," and Palmer felt that Young and the witnesses present knew each other. The gas-station clerk confirmed this suspicion when she testified that Young was a regular at the gas station.

{¶ 8} The dispute over the cab fare then turned into a physical altercation between Young and Palmer. Young, who was described as taller than Palmer and as a "bigger guy," shoved Palmer two times and called him a "pussy" both times. The second time Young shoved Palmer, he pushed Palmer into the convenience store's glass door. Young shoved Palmer so hard that Palmer felt like he was going to fall backwards. Video-surveillance footage confirms that Palmer was pushed backwards into the convenience store's glass door and that the door swung open as Palmer hit it. Additionally, one of the state's witnesses testified that Young said that he was going to "whoop [Palmer's] ass."

{¶ 9} After being shoved into the glass door, Palmer regained his balance and quickly walked out of the store, turning left towards his vehicle. Palmer then immediately got into his vehicle to call the police. When Young first exited the

store behind Palmer, he began walking to the right. But after taking a few steps, Young changed course and started walking in the same direction as Palmer.

{¶ 10} There was conflicting testimony about why Young turned and approached Palmer's vehicle. One witness testified that he heard Palmer tell Young that Young had forgotten his phone in the cab. Young testified that he approached the cab because he realized on his own that he had forgotten his phone and thought it might be in the cab. Palmer denied calling Young back to the vehicle and testified that he had not seen or heard Young using a phone in the cab that night.

{¶ 11} According to Palmer, Young "[c]ame right up on [Palmer] * * * [f]aster than lightning." Palmer testified that he feared Young was going to kill him, so he pulled his gun out of a bookbag that was on the passenger seat of his cab and fired two shots at Young. Young was hit in the neck and fell to the ground.

{¶ 12} After firing the two shots, Palmer exited his vehicle and fired a third shot at the ground near Young. Palmer testified that his intention for firing the third shot was to scare Young and ensure that Young did not get up. After firing the third shot, Palmer got back into his vehicle and drove away. Young was transported to a hospital and survived his injuries.

{¶ 13} Palmer was indicted on one count of attempted murder and one count of felonious assault, along with accompanying firearm specifications. At trial, Palmer explained that he first began carrying a gun in his cab in 2018 after hearing about a cab driver who had been shot by a patron. Palmer testified that he rarely drove at night because he was too scared and that in his experience as a cab driver, he had been shot at, attacked, hit, beat across the head, and robbed. At trial, Palmer admitted that he shot Young, but he claimed it was self-defense. Palmer requested a self-defense jury instruction. The trial court denied Palmer's request. The trial court determined that Palmer's statements about his means of escape were "really not credible." The trial court also acknowledged that while it was "reasonable to conclude * * * that perhaps Mr. Palmer may not have started the affray," the court

4

believed that "the evidence support[ed finding] that [Palmer] was at fault." And the trial court ultimately determined that it did not "believe that a reasonable person would believe that they were in danger of being killed by Mr. Young under that situation."

{¶ 14} The jury returned a not-guilty verdict on the attempted-murder charge but a guilty verdict for the felonious-assault charge and accompanying firearm specification. Palmer appealed to the Twelfth District. Palmer asserted several assignments of error, including that the trial court erred by refusing to provide a self-defense jury instruction. 2022-Ohio-2181, ¶ 12, 27, 29, 36. The Twelfth District rejected Palmer's arguments and affirmed the trial court's decision. *Id.* at ¶ 26, 41. The court of appeals agreed with the trial court that Palmer was not entitled to a self-defense jury instruction, because the facts presented did not show that Palmer had a "reasonable, justifiable, or bona fide fear" to support his self-defense claim. *Id.* at ¶ 26.

{¶ 15} We accepted Palmer's appeal on the following propositions of law:

1. R.C. 2901.05, as amended, requires only that a defendant present evidence "tending to support" the use of self-defense to trigger the prosecution's burden to disprove the elements of self-defense beyond a reasonable doubt. Where a trial court first requires a defendant to present qualitative evidence proving each element of self-defense, they improperly shift the burden of production from the prosecution to the defendant.

2. Where there is conflicting evidence on a self-defense factor, the jury should decide that factor. Where the trial court declines to instruct the jury on self-defense based on their own weighing of evidence's credibility, they usurp the province of the jury as finder of fact, in derogation of a defendant's right to a trial by jury.

5

*See* 168 Ohio St.3d 1452, 2022-Ohio-3903, 198 N.E.3d 104.

## II. Law and Analysis

### A. Standard of Review

{¶ 16} This court reviews whether a claim of self-defense is subject to the sufficiency-of-the-evidence standard de novo. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 13. And when a trial court refuses to give a requested jury instruction, the proper standard of review is whether the trial court abused its discretion under the facts and circumstances of the case. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

### B. R.C. 2901.05 and the Burden of Production

{¶ 17} In 2019, the General Assembly modified the burden of proof requirements for affirmative defenses, including self-defense, via an amendment to R.C. 2901.05. *See* 2018 Am.Sub.H.B. No. 228 ("H.B. 228"). Prior to the effective date of H.B. 228, "a defendant claiming the affirmative defense of self-defense had the burden of proving" all the elements of self-defense "by a preponderance of the evidence." *Messenger* at ¶ 15. But after H.B. 228 became effective, the burden of persuasion shifted to the prosecution. Now "the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense." R.C. 2901.05(B)(1).

{¶ 18} We recently considered whether the amendments to R.C. 2901.05 also eliminated the defendant's burden of production regarding self-defense. *Messenger* at ¶ 20-21. We held that the H.B. 228 amendments did not eliminate the defendant's burden of production. *Id.* at ¶ 27. We stated:

> The plain language of R.C. 2901.05(A) reflects that self-defense is still an affirmative defense and that the burden of production is still on the defendant: "The burden of going forward with the evidence of an *affirmative defense*, and the burden of proof,

by a preponderance of the evidence, for an *affirmative defense other than self-defense*, defense of another, or defense of the accused's residence presented as described in division (B)(1) of this section, is upon the accused." (Emphasis added [in *Messenger*].) By stating that the burden of persuasion is on the defendant for "an affirmative defense other than self-defense," the statute indicates that self-defense falls within the category of affirmative defenses but is excepted from the burden of persuasion. And by stating that the defendant bears the "burden of going forward with the evidence of an affirmative defense," the statute indicates that there are no exceptions to the defendant's burden of production regarding affirmative defenses.

*Id.* at ¶ 21, quoting R.C. 2901.05(A).

{¶ 19} Because H.B. 228 did not eliminate a defendant's burden of production, a trial court does not error by requiring a defendant to present qualitative evidence supporting each element of self-defense. As we stated in *Messenger*, the state's burden of persuasion is not triggered until the defendant produces "legally sufficient evidence" for every self-defense element. 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, at ¶ 19; *see id.* at ¶ 25. Therefore, we reject Palmer's argument to support his first proposition of law. The trial court was correct to require Palmer to present legally sufficient evidence for all the elements of self-defense before affording him a self-defense jury instruction.

*C. Satisfying the Burden of Production to Receive a Self-Defense Jury Instruction*

{¶ 20} The standard for judging whether a defendant meets his burden and presents legally sufficient evidence is "[s]imilar[] to the standard for judging the sufficiency of the state's evidence," *id.* at ¶ 25. "[I]f the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to

find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden." *Id*. This burden of production is "not a heavy one and * * * might even be satisfied through the state's own evidence." *Id.* at ¶ 22; *see also State v. Giglio*, 8th Dist. Cuyahoga No. 112001, 2023-Ohio-2178 (self-defense jury instruction given on minimally sufficient evidence of self-defense).

{¶ 21} The trial court "is in the best position to gauge the evidence before the jury and * * * determine whether the evidence adduced at trial was sufficient to require an instruction." *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 72. When determining whether evidence is sufficient, a trial court must consider only the adequacy of the evidence presented—not its persuasiveness, *see Disciplinary Counsel v. Smith*, 152 Ohio St.3d 337, 2017-Ohio-9087, 96 N.E.3d 234, ¶ 23. The question is not whether the evidence should be believed but whether the evidence, *if believed*, could convince a trier of fact, beyond a reasonable doubt, that the defendant was acting in self-defense. *See Messenger* at ¶ 25-26; *see also State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4.

{¶ 22} Because the trial court is in the best position to gauge the evidence before the jury, we will only reverse the trial court's decision to deny a defendant's request for a self-defense jury instruction if the trial court's "attitude [was] unreasonable, arbitrary or unconscionable." *Wolons*, 44 Ohio St.3d at 68, 541 N.E.2d 443. Here, the trial court's attitude was unreasonable because the court looked at the persuasiveness of the evidence presented rather than the adequacy of the evidence presented. It improperly weighed the evidence and considered whether it found Palmer's evidence credible and believable. For example, the trial court stated that Palmer's statements were "really not credible." The trial-court judge acknowledged that Palmer "may not have started the affray" but went on to

state that he believed that the evidence supported a finding that Palmer was at fault. Because the trial court abused its discretion by weighing the evidence when performing a sufficiency analysis, we hold that Palmer was entitled to a self-defense jury instruction if he produced legally sufficient evidence for each element of self-defense.

*D. Reviewing the Presented Evidence for Adequacy, and Not Persuasiveness, Did Palmer Meet his Burden of Production?*

{¶ 23} Palmer was entitled to a self-defense jury instruction if he produced evidence that (1) he was not at fault in creating the situation that led to the affray; (2) he had a "bona fide belief" that he was "in imminent danger of death or great bodily harm" and his only way to escape was by using force; and (3) he did not violate a duty to retreat. *Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, at ¶ 14; *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). Following a recent amendment to R.C. 2901.09(B), "a person has no duty to retreat before using force in self-defense * * * if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(B); 2020 Am.S.B. No. 175.

{¶ 24} Regarding the first element of self-defense, Palmer presented sufficient evidence that he was not at fault in creating the situation that led to the shooting of Young. The physical altercation began by Young shoving Palmer twice, calling him a "pussy" both times, and also stating that he was going to "whoop [Palmer's] ass." Video-surveillance footage confirms that the second time Young shoved Palmer, it was into the convenience store's glass door. The footage shows that the door swung open as Palmer hit it, and viewing the evidence in a light most favorable to the defendant, we should believe Palmer's testimony that he felt like he was going to fall backwards.

{¶ 25} To meet the burden of production for the second element of self-defense, Palmer did not need to present adequate evidence that every reasonable person would have believed he was in imminent danger and that deadly force was

necessary. Rather, Palmer only needed to present adequate evidence that a reasonable person, under the same circumstances and with Palmer's same subjective beliefs and faculties, would have believed that he was in imminent danger and that deadly force was necessary. *See State v. Thomas*, 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997). To make this assessment, we must put ourselves in Palmer's position. *See id.* We must account for Palmer's "particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack," *id.*, to determine whether he "*reasonably* believed [he] was in imminent danger," *id.* (emphasis added in *Thomas*).

{¶ 26} On the night of the shooting, Palmer was 71 years old. In his years driving a cab, he had been shot at, attacked, beaten, and robbed. He began carrying a gun in his cab after hearing a story about a taxi driver who had been shot in the head, and he typically avoided driving his cab at night because he was afraid.

{¶ 27} Nicholas Young, on the other hand, was 38 years old and described as a taller and "bigger guy." On the night of the shooting, Young was very intoxicated. Palmer was aware that Young was intoxicated but did not know if he was drunk or on drugs.

{¶ 28} Prior to the altercation, Palmer realized that he was the only black man in an area where everyone else was white. This testimony was supported by video-surveillance footage showing that Palmer was the only black person in the convenience store.

{¶ 29} After being shoved twice and called a "pussy," Palmer exited the store and walked in the direction of his vehicle to call the police. Young exited behind Palmer, heading in the opposite direction, but quickly changed course and began walking in the same direction as Palmer. Viewing the evidence in the light most favorable to Palmer, we should believe that Young "[c]ame right up on [Palmer] * * * [f]aster than lightning." Palmer feared that Young was going to kill him, and Palmer did not know whether Young had a weapon.

{¶ 30} Viewing the evidence presented in the light most favorable to the defendant, we find that Palmer presented legally sufficient evidence to show that under the same circumstances, a reasonable cab driver of Palmer's age, with the same history and knowledge and in the same environment in which Palmer found himself, could have subjectively believed that he was in imminent danger and that deadly force was necessary. Therefore, the judgment of the Twelfth District Court of Appeals is reversed and this case is remanded for a new trial on the felonious-assault charge and accompanying firearm specification.

### III. Conclusion

{¶ 31} When determining whether to provide a self-defense jury instruction, it is not the trial court's duty to determine whether the defendant presented *persuasive* evidence to support the elements of self-defense. Rather, it is the trial court's duty to decide whether the defendant presented *adequate* evidence to support the elements of self-defense—that is, evidence that *if believed*, could convince a trier of fact, beyond a reasonable doubt, that the defendant was acting in self-defense. Viewing the evidence in the light most favorable to the defendant in this case—appellant, Phillip Palmer—we find that Palmer was entitled to a self-defense jury instruction because he met his burden of production by presenting legally sufficient evidence for each element of the defense. For this reason, we reverse the judgment of the Twelfth District Court of Appeals and remand this case to the trial court for a new trial on the felonious-assault charge and accompanying firearm specification.

Judgment reversed
and cause remanded.

DONNELLY, STEWART, and BRUNNER, JJ., concur.

DEWINE, J., dissents, with an opinion joined by FISCHER and DETERS, JJ.

––––––––––––––––––

**DEWINE, J., dissenting.**

{¶ 32} Following a dispute about a cab fare, Phillip Palmer fired two shots at Nicholas Young at point-blank range, hitting Young in the neck with one of the shots. As Young lay on the ground, Palmer got out of his cab, stood over Young, and fired another shot that missed Young by inches. The majority reverses Palmer's conviction concluding that the trial court committed prejudicial error by not instructing the jury on self-defense. But under our precedent, the trial court got it right; it is the majority that makes a mistake.

{¶ 33} We have long held that trial courts have discretion in determining whether a jury instruction is warranted by the evidence. And we have long held that self-defense has both a subjective and an objective component: self-defense requires evidence that the defendant believed that the use of deadly force was necessary to protect himself from being killed or seriously injured *and* evidence that this belief was objectively reasonable.

{¶ 34} Today, though, the majority ignores the deference we have long afforded to trial judges to determine whether a jury instruction is warranted. Even worse, it effectively removes the objective standard from self-defense, requiring that an instruction be given based on a purely subjective belief that the use of deadly force is necessary. Because I don't think this court ought to be changing these well-established standards, I respectfully dissent.

**The trial judge did not abuse his discretion in declining to give a self-defense instruction**

{¶ 35} We have entrusted trial judges with the primary responsibility of determining whether the evidence presented is sufficient to merit a jury instruction. Because "the trial judge is in the best position to gauge the evidence before the jury," the trial judge is "provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction." *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 72; *see also State v. Wolons*, 44

12

Ohio St.3d 64, 541 N.E.2d 443 (1989), paragraph two of the syllabus ("It is within the sound discretion of the trial court to determine whether the evidence presented at trial is sufficient to require a jury instruction"). We reverse trial courts in the exercise of this discretion only when they have abused it. *See Wolons* at 68. An abuse of discretion requires that "the court's attitude [be] unreasonable, arbitrary or unconscionable," *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). The majority recites this standard but neglects to heed it.

{¶ 36} A trial judge may properly refuse to give a jury instruction when the evidence is legally insufficient to support it. *See State v. Adams*, 144 Ohio St.3d. 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 245. Thus, to determine whether the trial judge abused his discretion, we need to consider whether the evidence adduced at trial was legally sufficient to support the claim of self-defense. *See Fulmer* at ¶ 72. "Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of self-defense." *State v. Melchior*, 56 Ohio St.2d 15, 20, 381 N.E.2d 195 (1978). But "[i]f the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *Id.*

{¶ 37} A self-defense claim requires a defendant to produce evidence "(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002).

{¶ 38} The "second element of self-defense is a combined subjective and objective test." *State v. Thomas*, 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997). This element considers the "bona fides of defendant's belief, and reasonableness therefor, and whether, under the circumstances, he exercised a careful and proper use of his own faculties," *State v. Sheets*, 115 Ohio St. 308, 310, 152 N.E. 664

(1926). The defendant must have "reasonable ground to believe" that he is in imminent danger of death or serious bodily harm and that the use of deadly force is necessary to avoid that danger. *Marts v. State*, 26 Ohio St. 162, 167 (1875). A fact-finder must determine that a use of force is objectively reasonable before considering whether "subjectively, [a] particular defendant had an honest belief that she was in imminent danger." (Emphasis deleted.) *Thomas* at 331.

{¶ 39} A defendant must possess an objectively reasonable belief not only that the use of force is necessary but also that the force used is "reasonably related to the threatened harm which [the defendant] seeks to avoid." 2 Wayne R. LaFave, *Substantive Criminal Law*, Section 10.4(b) (3d Ed.2023). Thus, "[o]ne may justifiably use *nondeadly* force against another in self-defense if he reasonably believes that the other is about to inflict unlawful bodily harm," but "deadly force may only be used against what is reasonably believed to be deadly force." *Id.*

{¶ 40} In other words, a defendant may use " 'only that force that is reasonably necessary to repel the attack.' " *State v. Bundy*, 2012-Ohio-3934, 974 N.E.2d 139, ¶ 55 (4th Dist.), quoting *State v. Hendrickson*, 4th Dist. Athens No. 08CA12, 2009-Ohio-4416, ¶ 23, citing *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990). The degree of force used must be " 'warranted' under the circumstances and 'proportionate' to the perceived threat." *Hendrickson* at ¶ 31, citing *State v. Palmer*, 80 Ohio St.3d 543, 564, 687 N.E.2d 685 (1997).

{¶ 41} Applying these standards, it is evident that the trial judge did not abuse his discretion in declining to give a self-defense instruction. In concluding otherwise, the majority ignores the discretion that trial-court judges are accorded to "gauge" the evidence and instead applies what is essentially de novo review—putting its own spin on the evidence.

{¶ 42} There may have been sufficient evidence that Palmer was subjectively in fear. But there was not sufficient evidence that it was *objectively*

*reasonable* for Palmer to believe that he was in imminent danger of death and that the use of deadly force was necessary to protect himself.

{¶ 43} Significantly, there was no evidence that Young was likely to kill or inflict severe bodily harm on Palmer. There was nothing to suggest that Young possessed a firearm or any other weapon. To the contrary, Young gave no indication that he was armed during the lengthy cab ride or during the brief altercation inside the store. Likewise, Palmer conceded that Young did not verbally threaten him. Further, during the altercation in the store, the force used by Young was limited to a couple of pushes. There were no punches thrown—or other violent acts—and the shoves were not of sufficient force to knock Palmer to the ground. As the trial court noted, during the confrontation in the store, "Young never had anything in his hands other than a cigarette * * *. He didn't pick up a beer bottle. He didn't pick up anything. He had no gun. He had no knife." Further, if Young "had wanted to do something, he could've done it out on the road in Ripley." In short, "[t]here was absolutely nothing in * * * Young's conduct that night, other than being drunk, that could've caused anybody fear."

{¶ 44} Moreover, there was no evidence that it was reasonable for Palmer to use *deadly* force to repel a perceived threat from Young. The force used by Palmer was disproportionate to any objective view of the perceived threat. To put it simply, Ohio law does not allow a person to shoot another when there is no indication that the other person is about to use deadly force. The trial judge did not abuse his discretion in declining to provide a self-defense instruction.

### The majority's limited analysis is unpersuasive

{¶ 45} In concluding otherwise, the majority largely ignores the objective component of self-defense and instead focuses on Young's subjective beliefs. But to the extent that the majority does try to address the objective component of self-defense, its analysis misses the mark.

**{¶ 46}** The majority points to the following facts to support its conclusion that the use of deadly force was reasonable:

- Palmer was 71 years old, while the victim was younger and larger in stature;

- In his years driving a cab, Palmer had been a crime victim and had heard a story about another cab driver who had been shot;

- The victim was drunk;

- Palmer was the only black person in the convenience store;

- Palmer was shoved twice in the store and called a "pussy"; and

- The victim—in Palmer's telling—came up to the cab "faster than lightning."

**{¶ 47}** In my view, the trial court correctly concluded that none of these facts made it objectively reasonable for Palmer to decide to use deadly force. For example, the majority places considerable weight on the fact that "Palmer was the only black person in the convenience store," majority opinion, ¶ 28. It doesn't mention that there were only six other people in the convenience store: the victim, the clerk, and four customers who entered the store at various points during Palmer's interaction with Young. Nor does it mention that no one besides Palmer and Young were near Palmer's cab when Palmer decided to fire his revolver at Young.

**{¶ 48}** Moreover, I find it deeply troubling that this court would suggest that being around people of a different race is a factor that is appropriately considered in determining whether the use of deadly force is reasonable. Is this court really suggesting that in considering whether deadly force is warranted, a judge should consider the victim's race and that of others in the vicinity? Does the majority really believe that our analysis of the reasonableness of Palmer's actions would be different if Palmer were white or one of the convenience store customers African American? I am not aware of any case in which we have ever suggested that being racially outnumbered makes the use of deadly force reasonable.

16

*Compare State v. Smith*, 2 Wash.App. 769, 771, 470 P.2d 214 (1970) ("[the victim's race] is not relevant to a determination of the reasonableness of the appellant's apprehension of danger just prior to his firing the weapon"). And I do not think that we should now adopt the view that the victim's race is a relevant consideration in assessing the reasonableness of the use of deadly force.

{¶ 49} Nor does the fact that Young was younger and larger in stature do much to bolster the majority's analysis. People of different ages and sizes get in disagreements—sometimes highly contentious ones—all the time, but we have never suggested that simply being in a minor confrontation with someone who is younger or bigger creates a justification for the use of deadly force.

{¶ 50} The same goes for the fact that Palmer had been a crime victim in the past and had heard about another crime involving a cab driver. After all, many people have been victims of crimes, and we have all heard about other crimes. But such experiences and general knowledge do not establish whether a defendant had a reasonable belief that a particular use of deadly force was justified.

{¶ 51} Similarly, Young's intoxication adds little to the equation. Palmer testified that he had dealt with drunks in his cab "1,001 times." And by the time Palmer pulled out his gun and shot Young, he had dealt with a drunk Young for nearly two hours without any indication that Young had a gun or was likely to attempt to inflict severe bodily harm on him.

{¶ 52} The confrontation in the store undermines the majority's conclusion about the objective reasonableness of the use of deadly force. The altercation was limited to a couple of shoves and name calling, and Young never brandished or indicated that he possessed a deadly weapon. The video evidence also reveals that Young sought to leave the convenience store but that Palmer blocked his way.

There was nothing in the altercation to cause a reasonable person to believe that deadly force was called for.[1]

{¶ 53} The majority leans most heavily on Palmer's statement that Young approached his cab "faster than lightning." The majority is correct that the trial judge was not permitted to assess Palmer's credibility in deciding whether the evidence satisfied the sufficiency standard. But the judge was entitled to consider Palmer's statement in the context of the video evidence, which showed Young walking toward the cab at a normal gait up until he almost reached the cab (and was out of the video camera's range).

{¶ 54} Moreover, a quick approach would not make Palmer's use of deadly force reasonable. Remember Palmer not only had to show that his subjective fear of attack was reasonable but also that he reasonably believed that *deadly* force was necessary to repel the attack. There is nothing in the prior interaction between Palmer and Young that would make it reasonable for Palmer to believe that he needed to use deadly force simply because Young approached his cab quickly.

{¶ 55} And that highlights the glaring hole in the majority's analysis. The majority points to facts that might lead a reasonable person in Palmer's position to feel at a disadvantage in a physical confrontation with Young—Young was younger, bigger, and angry with Palmer. But the majority does not identify any facts that would lead a reasonable person in Palmer's position to believe that Young was about to kill or seriously injure him.

---

1. The majority quotes one state witness's testimony that Young said that he was going to "whoop [Palmer's] ass." Majority opinion, ¶ 8. But even if Young made that statement, it could not have impacted the reasonableness of Palmer's use of force, because Palmer testified that he did not hear Young make any threats that night. Moreover, the majority provides only a part of the witness's statement. According to the witness, Palmer had shoved Young, which prompted Young to warn Palmer, "[T]he next time you shove me, I'm going to whoop your ass."

**Conclusion**

{¶ 56} The trial court did not abuse its discretion when it ruled that Palmer was not entitled to a jury instruction on self-defense. Even when viewed in the light most favorable to Palmer, the evidence was not sufficient to lead a reasonable juror to conclude that it was objectively reasonable for Palmer to use deadly force in self-defense. In deciding otherwise, the majority disregards the discretion we grant trial judges to "gauge the evidence" to determine whether an instruction is appropriate. *Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, at ¶ 72. And it ignores our long-standing requirement that a defendant's belief that the use of deadly force is necessary in self-defense must be objectively reasonable. *Sheets*, 115 Ohio St. at 310, 152 N.E. 664. I respectfully dissent.

FISCHER and DETERS, JJ., concur in the foregoing opinion.

————————————

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nick Horton, Assistant Prosecuting Attorney, for appellee.

Law Office of John D. Hill, L.L.C., and John D. Hill Jr., for appellant.

Timothy Young, Ohio Public Defender, and Addison Spriggs, Assistant Public Defender, urging reversal for amicus curiae, Office of the Ohio Public Defender.

————————————