[Cite as *State v. Wappner*, 2026-Ohio-1350.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 24AP-8 |
| | | (C.P.C. No. 22CR-4528) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Johnnie J. Wappner, | : | |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on April 14, 2026

---

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert*.

**On brief:** *Mitchell A. Williams*, Public Defender, and *Robert D. Essex*, for appellant. **Argued:** *Robert D. Essex*.

---

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1} Defendant-appellant, Johnnie J. Wappner, appeals a judgment of the Franklin County Court of Common Pleas convicting him of felonious assault, felony murder, and reckless homicide. For the reasons that follow, we affirm in part, reverse in part, and remand the cause for a new trial on Wappner's felonious assault and felony murder charges.

## I. Facts and Procedural History

{¶ 2} On September 29, 2022, a Franklin County Grand Jury indicted Wappner on three felony counts: (1) felonious assault by causing serious physical harm, R.C. 2903.11(A)(1), and/or causing or attempting to cause physical harm with a deadly weapon, R.C. 2903.11(A)(2); (2) purposeful murder, R.C. 2903.02(A); and (3) felony murder, R.C. 2903.02(B). Each count included a firearm specification under

R.C. 2941.145(A). The charges arose out of an altercation involving Wappner; his neighbor, Marcus Deloney; and their respective families including Deloney's wife, Ashley Deloney ("Ashley"); Wappner's partner, Ciarra L. ("Ciarra"); and Ciarra's minor son, T.L. Wappner entered a not guilty plea, and the matter proceeded to a jury trial.

{¶ 3} Some of the evidence before the jury was undisputed. Wappner, Deloney, and their respective families lived next to one another in a duplex. On the night of the incident, Deloney and Wappner both parked their vehicles at the duplex and began to argue about parking spots. Deloney patted Wappner down and asked if he had a gun. Wappner then hit Deloney. After this first altercation, the two men disengaged, Deloney called 911, and Wappner went around behind the duplex. Ashley went into her house and emerged with a firearm. A separate physical altercation arose between Ciarra and Ashley in front of the duplex. T.L. and Deloney joined the altercation, followed by Wappner after he returned from the rear of the building. During that second altercation, Wappner struck Deloney with a gun. The gun discharged and fatally wounded Deloney. Wappner ran from the scene but turned himself in to the police the next morning and consented to an interview. He admitted to striking Deloney with a gun during the second altercation but denied that he intended to shoot Deloney.

{¶ 4} The jury heard conflicting evidence about other crucial facts. According to the evidence most favorable to plaintiff-appellee, the state of Ohio, Deloney and Ashley were sitting in their car, which was parked in front of the duplex, when Wappner drove up and yelled at them to move their car. Deloney exited the car to speak with Wappner, and the two men ended up yelling back and forth at one another. Deloney, who was unarmed himself, asked if Wappner had a gun and patted Wappner down for weapons. Wappner then struck Deloney in the head with a gun. Deloney filmed Wappner on his phone while repeatedly exclaiming "you hit me in the head with a gun." (State's Ex. B at 00:18-25.) Deloney then called 911. Ashley became afraid after seeing Wappner hit Deloney with a gun, so she ran into the house to get her own gun. Ashley and Ciarra began to argue, and Ashley put her gun down on a ledge in the front of the duplex. Ciarra then pushed Ashley, causing them both to fall over the ledge, and the two wrestled on the ground, with Ciarra on top of Ashley. The fight between the women prompted T.L. to exit the house and approach them, and it also prompted Deloney to approach them. T.L. then hit Deloney, and Deloney pulled Ciarra off of Ashley. Wappner then shot Deloney in the back.

{¶ 5}    According to the evidence most favorable to the defense, the first altercation arose after Wappner asked Deloney to move his car because Deloney had parked in Wappner's agreed upon parking spot.  Deloney grabbed Wappner, prompting Wappner to hit Deloney with his hand.  Deloney then pulled a gun on Wappner.  Wappner attempted to diffuse the situation and left to move his car to another parking spot.  While Wappner was away, Ashley hit Ciarra in the face, causing her glasses to fall off.  Ciarra was afraid that Ashley was going to pick her gun up from the ledge, so Ciarra tried to push her away from the gun.  The two women ended up fighting on the ground, prompting T.L. to come outside to protect Ciarra, his mother.  Deloney came toward Ciarra, and T.L. struck Deloney to keep Deloney from striking Ciarra.  T.L. yelled at Deloney not to touch Ciarra.  Deloney put T.L. in a chokehold, and then struck Ciarra.  Ciarra tried to disengage from Ashley to help T.L., but Ashley was holding Ciarra by her hair.  When Wappner returned to the front of the duplex, he saw that Deloney was choking T.L. and swinging at Ciarra with a gun in his hand. Wappner ran up to the melee and struck Deloney with a gun to stop Deloney's attack.  The men then exchanged blows, and Wappner's gun accidentally discharged.

{¶ 6}    At the conclusion of trial, the parties extensively discussed jury instructions. Relevant here, the parties disagreed over the defenses and lesser offenses that would be applicable to each of the charged offenses.  The state requested instructions for aggravated assault and involuntary manslaughter as lesser-included offenses for felonious assault and felony murder.   The trial court granted the state's request over Wappner's objection. Wappner requested instructions for misdemeanor assault, reckless homicide, and negligent homicide as lesser-included offenses of felonious assault, murder, and felony murder, respectively.  The court agreed to include an instruction on reckless homicide but denied Wappner's request regarding misdemeanor assault and negligent homicide.

{¶ 7}   Wappner additionally requested jury instructions on self-defense and defense of others related to Wappner's act of striking Deloney, and an instruction on accident related to Wappner's act of shooting Deloney.  The state objected and argued that Wappner could only choose one defense, as self-defense and accident are inconsistent defenses.  The trial court agreed with the state, finding that instructions on both defenses would confuse the jury, and concluded that it would provide an instruction on accident only.  The state later requested an instruction that the jury was not allowed to consider

defense of others when reaching its verdicts, which the court granted over Wappner's objection.

{¶ 8} During closing arguments, the state argued the jury could find Wappner guilty of felonious assault based on any one of three acts: (1) striking Deloney during their first altercation, (2) striking Deloney during their second altercation, or (3) shooting Deloney at the end of the second altercation. The state argued the jury could base a felony murder verdict using either of the latter two felonious assaults as the predicate offense. The state also noted that it indicted Wappner for felonious assault under two alternative theories: causing serious physical harm or causing or attempting to cause physical harm with a deadly weapon. The state stressed that the jurors did not need to agree on the same theory to find Wappner guilty.

{¶ 9} The jury returned a verdict finding Wappner not guilty of purposeful murder, and guilty of reckless homicide, felonious assault, felony murder, and three attendant firearm specifications. The trial court later merged the felonious assault and reckless homicide counts into the count for felony murder.

{¶ 10} Wappner filed a motion for new trial, which the trial court addressed during the sentencing hearing. Wappner maintained that the court should have instructed the jury on self-defense or defense of others. The court agreed that Wappner's act of striking Deloney, committed while Deloney was choking T.L., could have warranted an instruction on defense of others. However, the court noted the felonious assault charge had merged and the act of shooting was the actual cause of Deloney's death, implying that the act of striking Deloney with a gun was no longer relevant. And because Wappner claimed that the act of shooting was accidental, the court held that a defense-of-others instruction was prohibited by jurisprudence holding that accident and self-defense (including defense of others) are mutually exclusive defenses, primarily relying on *State v. Champion*, 109 Ohio St. 281 (1924). Accordingly, the court denied Wappner's motion for new trial.

{¶ 11} The court imposed a sentence of 15 years to life in prison for felony murder, along with two mandatory consecutive 3-year sentences for two of the gun specifications, for a total of 21 years to life in prison. Wappner filed a timely notice of appeal, and the matter is now before this court.

## II. Assignments of Error

{¶ 12} Wappner assigns the following three assignments of error for our review:

[I.] The trial court violated the appellant's rights to due process and a fair trial under the United States Constitution and the Ohio Constitution when it refused to give a defense of others instruction alongside an accident instruction when both the court and the prosecutor agreed that the evidence could support that there were two separate incidents.

[II.] The trial court violated the appellant's rights to due process and a fair trial under the United States Constitution and the Ohio Constitution when it refused to give a reckless assault instruction as a lesser of the felonious assault charge.

[III.] The multiple instances of refusal to give the appellant's requested instructions rise to the level of cumulative error.

## III. Analysis

{¶ 13} All of Wappner's assignments of error center on the trial court's decision not to include certain requested jury instructions. We generally review a trial court's provision of jury instructions for abuse of discretion. *State v. Palmer*, 2024-Ohio-539, ¶ 16, citing *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). However, a court does not have "the discretion to make errors of law." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39. We apply a de novo standard of review to a trial court's decision that a defendant is barred from or entitled to a particular jury instruction as a matter of law. *Palmer* at ¶ 16, 31; *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 22. Under either standard, if jury instructions contain error, " 'a reviewing court must consider the jury charge as a whole and "must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." ' " *State v. Wilks*, 2018-Ohio-1562, ¶ 115, quoting *Kokitka v. Ford Motor Co.*, 1995-Ohio-84, ¶ 16, quoting *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.2d 202, 208 (1990).

### A. Instructions on accident and defense of others

{¶ 14} In his first assignment of error, Wappner asserts the trial court committed reversible error when it failed to instruct the jury on defense of others in addition to accident. We agree. The state sought criminal liability based on Wappner's distinct acts of striking Deloney and shooting Deloney, and Wappner should have been afforded the opportunity to present relevant defenses regarding each of those acts.

**1. Felonious assault**

{¶ 15} In relevant part, felonious assault is defined under R.C. 2903.11(A) as knowingly causing serious physical harm to another, or knowingly causing or attempting to cause physical harm to another by means of a deadly weapon. The state argued to the jury that Wappner committed felonious assault through the alternative means of causing serious physical harm or using a deadly weapon. In addition, the state argued that at the end of the confrontation between Wappner and Deloney, Wappner committed felonious assault through either the act of striking Deloney with a gun or the act of shooting Deloney.[1] Wappner attempted to assert different defenses against each of the two acts: he argued that he struck Deloney with a gun in defense of others, and that he shot Deloney by accident.

{¶ 16} A criminal offense must involve the "concurrence of an evil-meaning mind with an evil-doing hand," or mens rea and actus reus. *Morissette v. United States*, 342 U.S. 246, 251 (1952). The defense of accident negates the mens rea element of an offense. *Jones v. State*, 51 Ohio St. 331, 341-42 (1894). The affirmative defenses of self-defense or defense of others do not negate any of the elements; they admit the elements but provide a legally recognized justification that exempts the actor from criminal liability. *State v. Martin*, 21 Ohio St.3d 91, 94 (1986). Accident and defense of others cannot apply to the same actus reus because one defense admits the mens rea and the other denies it. *Champion*, 109 Ohio St. at 286-87; *also see State v. Wilson*, 2024-Ohio-776, ¶ 18 (explaining that the use of force in self-defense "must be intentional—not accidental").

{¶ 17} In *Champion*, the defendant faced a single charge of murder based on the singular act of fatally shooting the victim. *Id*. at 282. At trial the defendant testified that she shot the victim by accident and had not intended to do him any harm. *Id*. at 284. The defendant was not entitled to a jury instruction on self-defense because, in addition to the fact that she failed to present evidence of the basic elements of self-defense, it would be paradoxical to allow her to claim that her act of shooting was both intentional and unintentional. *Id*. at 286-87. *Champion* follows the general understanding that defenses are mutually exclusive if the facts proving one defense would necessarily disprove the other.

---

[1] We note that the discussion in this section relates to only two of the three alternative acts that the state proposed as forming the basis of Wappner's felonious assault conviction. The third proposed act—striking Deloney at the beginning of the confrontation—is included in our subsequent discussion regarding harmless error.

*See Pavey v. Pavey*, 30 Ohio St. 600, 602 (1876). Conversely, two defenses are not inconsistent if it is possible for both to be true. Here, both of Wappner's defenses can be true because, unlike in *Champion*, Wappner's conduct involves two different actus rei, each one of which may have coincided with a different mens rea. It is not paradoxical to allow Wappner to claim that his act of striking Deloney was intentional and that his act of shooting was unintentional.

{¶ 18} The trial court erred in failing to provide both an accident instruction related to Wappner's act of shooting Deloney with a gun and a defense-of-others instruction related to Wappner's act of striking Deloney with a gun. "A criminal defendant has a right under the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be afforded a meaningful opportunity to present a complete defense to a properly instructed jury." *State v. Smith*, 2004-Ohio-6608, ¶ 22 (10th Dist.). Wappner conceded that he intentionally struck Deloney with a gun , and the court's refusal to instruct on defense of others deprived Wappner of his only defense regarding that act, ensuring Wappner's conviction. Under these circumstances, the court committed reversible error. *See id.*

{¶ 19} We note that the jury instruction error was not rendered moot when the trial court merged Wappner's felonious assault conviction for purposes of sentencing. The trial court imposed a three-year prison term for the firearm specification attached to the felonious assault charge pursuant to the currently prevailing interpretation of R.C. 2929.14(B)(1)(g) in *State v. Bollar*, 2022-Ohio-4370. Wappner's three-year prison term is a direct, adverse legal consequence of his felonious assault conviction, and the conviction is therefore "a subject matter on which the judgment of this Court could operate." *St. Pierre v. United States*, 319 U.S. 41, 42 (1943). Moreover, the merger of Wappner's felonious assault conviction did not moot the jury instruction error because, as explained below, the elements of felonious assault also formed the basis of Wappner's felony murder conviction.

### 2. Felony murder

{¶ 20} Felony murder is defined under R.C. 2903.02(B) as causing "the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not [voluntary or involuntary manslaughter]." The definition in R.C. 2903.02(B) provides only a portion of

the elements of the offense; the remaining elements are provided by the underlying felony offense. *State v. Fry*, 2010-Ohio-1017, ¶ 43. Accordingly, to obtain a conviction for felony murder, the state must establish "all the elements of the qualifying predicate offense—including any mens rea element specific to that criminal act." *State v. Owens*, 2020-Ohio-4616, ¶ 10. In this case, the state needed to establish that Wappner caused Deloney's death as a proximate result of Wappner knowingly causing serious physical harm or knowingly causing or attempting to cause physical harm with a deadly weapon. R.C. 2903.02(B); 2903.11(A).

{¶ 21} The language of R.C. 2903.02(B) does not require the state to establish any mens rea related to the causation of the victim's death—the state only needs to establish that the underlying felony proximately caused the victim's death. *Owens* at ¶ 9. Proximate causation, otherwise known as legal causation, "is different than cause in fact, which is often called 'but for' causation." *State v. Balmert*, 2025-Ohio-5588, ¶ 12. The relevant inquiry with proximate causation is not whether the predicate felony actually caused the victim's death, but instead whether the victim's death was a foreseeable consequence of the predicate felony. *Id.* at ¶ 14; *State v. Crawford*, 2022-Ohio-1509, ¶ 16.

{¶ 22} As with the felonious assault count, the state argued that Wappner committed felony murder through either the act of striking Deloney with a gun or the act of shooting Deloney. The state asserted that Wappner caused Deloney's death as a proximate result of either act, arguing that death was a foreseeable result both of shooting someone and of striking someone in the head with a loaded gun. And as with the felonious assault count, Wappner attempted to assert that he struck Deloney with a gun in defense of others, and that he shot Deloney by accident. Wappner did not dispute that causing death was a foreseeable result of either of his actions.

{¶ 23} Apart from the undisputed element of proximate causation of death, Wappner's felony murder conviction turned on the same elements as the felonious assault conviction. As explained above, the state's theory of guilt regarding the elements of felonious assault was based on two distinct, alternative acts, and Wappner should have been able to present applicable defenses regarding each of those acts. The accident instruction could not apply to felony murder based on striking Deloney with a gun because Wappner admitted to intentionally striking Deloney, and because his intent (or lack thereof) regarding causation of death was irrelevant. The trial court therefore committed

reversible error in failing to provide a defense-of-others instruction for Wappner's act of striking Deloney with a gun, in addition to an accident instruction for the act of shooting Deloney.

### 3. The state's alternative arguments

{¶ 24} The state agrees with Wappner that cases such as *Champion* do not prohibit a trial court from providing jury instructions on both accident and defense of others when those defenses apply to separate acts.   However, the state urges this court to affirm Wappner's convictions on alternative grounds, or at least to limit the scope of reversal and remand.  The state first argues that Wappner waived any error regarding his conviction for felony murder.  Second, the state argues that the specific facts of Wappner's case did not warrant an instruction on defense of others.  Third, the state indicates that Wappner's felonious assault conviction was also supported by his act of striking Deloney during the first altercation, which was not in defense of others.  We address these arguments in turn.

### a. Waiver

{¶ 25} The state argues that even if this court finds reversible error regarding the failure to include a jury instruction on defense of others, the reversal should apply exclusively to Wappner's felonious assault conviction. The state claims that Wappner limited all three of his assignments of error to his conviction for felonious assault in Count 1 of his indictment. The state contends that Wappner alleged no error whatsoever regarding his conviction on Count 3, felony murder.  We disagree with the state's portrayal of Wappner's arguments.

{¶ 26} In his first assignment of error, Wappner does not argue that this court should reverse his conviction and sentence for Count 1 only, nor does he argue that the court should reverse on felonious assault only.  Instead, Wappner argues that the trial court should have provided a defense-of-others instruction based on the multiple "acts" established through the evidence admitted at trial.  (Appellant's Brief at 24-26.)   He asks for a reversal of the entire judgment entry of conviction and sentence, which also indicates that he has not limited his argument to only one of his convictions.  Although the legal arguments in Wappner's appellate brief could certainly be described as vague at points, they do not include any express waiver of error regarding Wappner's conviction for felony murder.

{¶ 27} The state further asserts that Wappner waived any error related to his felony murder conviction at the trial level. The state points to a moment during the parties' jury-instruction arguments when defense counsel states: "Can I just say that we were only asking for defense of others with respect to Count 1, the felonious assault[?]" (Appellee's Brief at 25, quoting Tr. Vol 4 at 809.) This alleged waiver is taken out of context. When looking at the full context of defense counsel's argument, it is clear that Wappner wanted the defense-of-others instruction to apply to both felonious assault in Count 1 and to felonious assault as the predicate offense to felony murder in Count 3:

> [DEFENSE COUNSEL]: . . .
>
> Can I just say that we were only asking for defense of others with respect to Count 1, the felonious assault.
>
> Do you understand what I mean? Like, we are asking for that on the felonious assault.
>
> . . .
>
> . . . [H]ere we have a situation where there [are] two different acts. There is the act of striking Mr. Deloney with the firearm, and then the firearm going off. Even -- no matter how closely they are related in time, it is his prerogative to potentially say, When I came out there, I struck him for a purpose.
>
> . . . I don't think that the state of Ohio gets to say you get all of one or all of the other, because they are two different offenses. They have been charged differently.
>
> THE COURT: Well, so then I think you would argue he's not guilty of B murder because - -
>
> [DEFENSE COUNSEL]: Right, because you can't make the elements of felonious assault.

(Tr. Vol. 4 at 809-12.)

{¶ 28} While defense counsel discussed the defense-of-others instruction primarily in the context of felonious assault, we must remember that the elements of Wappner's felony murder charge necessarily include the elements of felonious assault. *See Owens*, 2020-Ohio-4616, at ¶ 9-10. The trial court's final instructions to the jury made clear that all of its instructions regarding felonious assault applied to the felony murder charge:

> Before you can find the defendant guilty of [felony] murder, you must find the State has proved beyond a reasonable doubt that . . . the defendant caused the death of . . . Deloney, as [a proximate] result of the defendant's committing or attempting to commit felonious assault, an offense of violence. I already defined for you the offense of felonious assault.

(Tr. Vol. 4 at 894.) We conclude that Wappner preserved the error from the trial court's refusal to provide a jury instruction on defense of others as it applies to both felonious assault and felony murder predicated on felonious assault.

### b. Factual support for a defense-of-others instruction

{¶ 29} Next, the state asserts that we should affirm Wappner's convictions on the alternative grounds that the specific facts of Wappner's case did not warrant an instruction on defense of others. The state argues that "the trial court reasonably determined that the defense failed to meet its burden of production showing that Wappner was lawfully defending [T.L.] or anyone else when he punched Deloney in the head with a firearm." (Appellee's Brief at 36.) The state argues we should affirm the foregoing determination because it did not involve an abuse of discretion or plain error. We disagree with both the state's representation of the trial court's decision and the state's suggested standard of review.

{¶ 30} Contrary to the state's claim, the trial court did not determine that Wappner failed to meet his evidentiary burden in support of his argument that he used force against Deloney in defense of T.L. The court determined as a matter of law that it could not provide a defense-of-others instruction in conjunction with an accident instruction, but it noted that "the testimony could support[] he was using a pistol to hit Mr. Deloney. . . to defend his son or stepson [T.L.]." ( Tr. Vol. 4 at 809.) When discussing Wappner's motion for a new trial based on the defense-of-others instruction, the trial court indicated that Wappner's act of striking Deloney with a gun "could be defense of another warranting an instruction," and if the shooting and accident instruction had not been part of the equation, "I should have given a self defense instruction." (Nov. 29, 2023 Tr. at 11.) Accordingly, the court did not make a formal determination about the factual support for Wappner's defense-of-others claim, and the court's comments indicate that it likely would have concluded that the evidence adequately supported Wappner's claim.

{¶ 31} Because we have already determined that the failure to instruct the jury on defense of others was legally erroneous, the state's argument regarding the factual support for Wappner's defense-of-others claim is, at best, subject to harmless error review. *See State v. Brooks*, 2022-Ohio-2478, ¶ 24 (indicating that an error of law regarding a self-defense instruction may be harmless if, based on the evidence presented, the defendant would not have been entitled to a self-defense instruction). Under the doctrine of harmless error, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). The state "bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *State v. Perry*, 2004-Ohio-297, ¶ 15.

{¶ 32} The state argues that Wappner was not entitled to an instruction on defense of others because T.L. was the initial aggressor against Deloney during the second altercation, and that Wappner was therefore not justified in using force against Deloney to protect T.L.

{¶ 33} Defense of others is governed by R.C. 2901.05(B)(1), which provides:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

A criminal defendant claiming self-defense must produce some evidence tending to show " '(1) that the defendant was not at fault in creating the situation giving rise to the affray, [and] (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force.' " *Palmer*, 2024-Ohio-539, at ¶ 37, quoting *State v. Barnes*, 2002-Ohio-68, ¶ 11. A claim of defense of another is essentially a claim of self-defense while standing in the shoes of the person being defended. *State v. Wenger*, 58 Ohio St.2d 336, 340 (1979). Thus, "if the person aided is the one at fault, then the intervenor is not justified in his use of force." *Id.*

{¶ 34} A criminal defendant bears the initial burden of presenting evidence tending to support a claim that the defendant used force in defense of others. *See State v. Messenger*, 2022-Ohio-4562, ¶ 19. The defendant satisfies this burden if the "evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense [or defense-of-others] claim when viewed in the light most favorable to the defendant." *Id.* at ¶ 25. "[T]he defendant's burden of production is not a heavy one," and "it might even be satisfied through the state's own evidence." *Id.* at ¶ 22.

{¶ 35} At trial, Ciarra testified that Ashley went into her home, emerged brandishing a gun, and punched Ciarra in the face. T.L. testified that he came outside of his home when he saw Ashley strike Ciarra and saw that Deloney looked like he was "going to start jumping." ( Tr. Vol. 2 at 465.) T.L. was concerned that Deloney was going to hurt Ciarra, and he struck Deloney to protect Ciarra. Both Ashley and Ciarra testified that they heard T.L. yelling at Deloney not to touch Ciarra. Ciarra and T.L. both testified that Deloney put T.L. in a chokehold, to the point that he almost blacked out, and that Deloney struck Ciarra several times. Wappner testified that when he returned to the front of the duplex after leaving momentarily, he saw Deloney choking T.L. while swinging at Ciarra. Wappner then ran up to Deloney and struck him with a gun to stop Deloney's attack.

{¶ 36} The state acknowledges that the foregoing evidence indicates that Wappner was defending T.L. who was in turn defending Ciarra, but the state argues that T.L. did not adequately prove that he reasonably feared for Ciarra's safety. We decline to weigh the evidence in support of the state's argument. When determining whether there is sufficient evidence to support a jury instruction on self-defense or defense of others, we do not consider the persuasiveness of the evidence presented. *Palmer*, 2024-Ohio-539, at ¶ 21. Irrespective of the strength or weakness of the evidence, some of the evidence at trial tended to show that T.L. was not at fault in his physical altercation with Deloney. In turn, that evidence tended to show that when Wappner found Deloney choking T.L., he was justified in his use of force against Deloney on T.L.'s behalf.

{¶ 37} The state additionally argues that Wappner was not entitled to an instruction on defense of others because Wappner unjustifiably struck Deloney during the first altercation and therefore instigated the entire, overarching affray between the two families. However, some of the evidence tended to indicate that Deloney instigated the physical aspect of the first altercation by grabbing Wappner and going through his pockets. Other

evidence indicates that Wappner and Deloney had disengaged from their first altercation—with Deloney getting his phone to call the police and Wappner temporarily leaving the immediate scene—by the time Ashley retrieved a gun and allegedly attacked Ciarra. The state points to other evidence in the record that contradicts the foregoing evidence. But again, we will not consider the persuasiveness of the evidence presented. *See Palmer* at ¶ 21. Wappner met his burden of producing some evidence tending to show that he used force against Deloney in defense of others. Accordingly, we cannot conclude that the error of law in failing to instruct the jury on defense of others was harmless based on the evidence presented.

### c. Alternative factual bases for Wappner's felonious assault conviction

{¶ 38} Finally, within the state's argument that the evidence admitted at trial did not support an instruction on defense of others, the state points out that Wappner made no claim that he acted in defense of others when he struck Deloney during the first altercation. The state notes that it argued in closing that Wappner's felonious assault charge was based on that initial punch. In other words, because Wappner might have been found guilty of felonious assault for his initial act of striking Deloney during the first altercation rather than his later act of striking Deloney in T.L.'s defense during the second altercation, the state indicates that the failure to instruct the jury on defense of others was rendered harmless. We decline to find harmless error in this respect because, among other reasons, the jury was not properly instructed on how to reach a guilty verdict based on multiple acts.

{¶ 39} The state repeatedly stressed to the jury that the felonious assault charge was a "zebra." (Tr. Vol. 1 at 87, 253; Tr. Vol. 4 at 821, 841, 857.) The state described the charge as a zebra because the state contended that Wappner committed felonious assault through the alternative means of (1) causing serious physical harm to Deloney or (2) causing or attempting to cause physical harm to Deloney with a deadly weapon. The state stressed that the jurors did not need to agree on the same theory to find Wappner guilty. However, the state also argued that Wappner committed felonious assault when he (1) struck Deloney at the beginning of their argument, (2) struck Deloney during the affray involving Ashley, Ciarra, and T.L., or (3) shot Deloney:

> You hear Mr. Deloney on the video say, You just hit me with a gun. That's a felonious assault. Or whenever the defendant hits him later on in the head with a gun, that's a felonious assault,

or when he shoots him, that's a felonious assault. You can pick
your felonious assault.

(Tr. Vol. 4 at 855.) When telling the jury that they need not be unanimous about the means
of committing felonious assault, the state discussed both the alternative means and
Wappner's different acts of felonious assault:

> Felonious assault. Deadly weapon or serious physical harm.
> It's the zebra. You have to agree it's felonious assault. You don't
> have to agree whether it's a deadly weapon or serious physical
> harm. Felonious assault when he struck him the first time.
> Felonious assault when he struck him the second time.
> Felonious assault when he shot and killed him.

(Tr. Vol. 4 at 857.)

{¶ 40} The difference between "alternative means" and "multiple acts" is significant
to the requirement of jury unanimity under Crim.R. 31(A). *State v. Gardner*, 2008-Ohio-
2787, ¶ 48-51. Although a jury need not unanimously agree on the means by which a crime
was committed, a jury must unanimously agree on the particular act that constitutes the
crime. *Id.* In a case where the state has decided to pursue a single charge based on multiple
acts, the trial court should " ' "instruct the jury that all of them must agree that the same
underlying criminal act has been proved beyond a reasonable doubt." ' " *Id.* at ¶ 50, quoting
*State v. Jones*, 96 Haw. 161, 170 (2001), quoting *State v. Timley*, 255 Kan. 286, 289-90
(1994), quoting *State v. Kitchen*, 110 Wash.2d 403, 410 (1988). The trial court gave no such
instruction in this case.

{¶ 41} We are mindful that Wappner has not raised a specific assignment of error
regarding jury instructions on alternative means versus multiple acts, and we are not
reversing his convictions for felonious assault and felony murder on those grounds. We are
also mindful, though, that we cannot base our analysis on a legally erroneous premise. The
state does not meet its burden of proving harmless error by speculating about other bases
for the jury's verdict, particularly where the jury was not properly instructed regarding
those other bases. *See Bollenbach v. United States*, 326 U.S. 607, 614 (1946) ("[T]he
question is not whether guilt may be spelt out of a record, but whether guilt has been found
by a jury according to the procedure and standards appropriate for criminal trials."").
Accordingly, we cannot conclude that the error of law in failing to instruct the jury on

defense of others was harmless since Wappner's convictions may have been based on multiple acts.

{¶ 42} In sum, we sustain Wappner's first assignment of error. The failure to instruct the jury on defense of others prevented Wappner from being able to fully and meaningfully defend against his felonious assault and felony murder charges. We conclude that the error was not harmless, and that it requires a reversal of Wappner's convictions for felonious assault and felony murder.

## B. Instructions on lesser-included offenses

{¶ 43} In his second assignment of error, Wappner asserts the trial court should have provided a jury instruction on misdemeanor assault as a lesser-included offense of felonious assault. He contends that he might have been found not guilty of felonious assault and felony murder predicated on felonious assault had the instruction been given. Because we are reversing Wappner's convictions for felonious assault and felony murder based on his first assignment of error, his second assignment of error is rendered moot.

## C. Cumulative error

{¶ 44} In his third assignment of error, Wappner argues that his convictions must be reversed due to cumulative error. To the extent that Wappner's argument addresses his convictions for felonious assault and felony murder, his argument is moot. To the extent that Wappner's argument addresses his conviction for reckless homicide, his argument is not well-taken.

{¶ 45} Under the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 1995-Ohio-168, ¶ 62. Wappner has not asserted any errors that could be connected to his reckless homicide conviction, let alone multiple errors. The conviction for reckless homicide was not predicated on felonious assault, nor was it potentially based on multiple acts. The sole act that could have constituted reckless homicide was Wappner's act of shooting Deloney. Wappner maintained that the shooting was accidental, and he received an appropriate jury instruction on accident. Wappner has not provided any analysis indicating that the erroneous jury instructions for his felonious assault and felony murder convictions so

permeated his proceedings that they deprived Wappner of his right to a fair trial on reckless homicide.

{¶ 46} Accordingly, we overrule Wappner's third assignment of error in part and render it moot in part.

**IV. Disposition**

{¶ 47} Based on the foregoing, Wappner's first assignment of error is sustained, his second assignment of error is moot, and his third assignment of error is overruled in part and moot in part. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and we remand this matter to that court for further proceedings on Wappner's charges for felonious assault and felony murder.

*Judgment affirmed in part and reversed in part;*
*cause remanded.*

MENTEL and LELAND, JJ., concur.

————————